**VALLEY NISSAN, INC., Appellant,**

v.

**Jessica DAVILA, Appellee.**

**No. 13–00–153–CV.**

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Sept. 4, 2003.

Robert J. Banks, Harlingen, for Appellant.

Carlos Hermenegildo Cisneros, R.W. Armstrong, R.W. Armstrong & Associates, Brownsville, for Appellee.

Before Chief Justice VALDEZ and Justices RODRIGUEZ and CANTU.[1]

## OPINION

Opinion by Chief Justice VALDEZ.

Appellee, Jessica Davila ("Davila"), purchased a truck from appellant, Valley Nis-

1. Justice Cantu did not participate in this decision. His assignment to this Court ex-

pired on August 31, 2003.

san, Inc. ("Valley Nissan"), in reliance on a false statement by a salesman that she had been approved for financing. Davila subsequently sued Valley Nissan under various theories including violation of the Texas Deceptive Trade Practices—Consumer Protection Act ("DTPA"). *See* TEX. BUS. & COM.CODE ANN. § 17.46 (Vernon 2002). A jury found in favor of Davila on all theories presented in the jury charge. The trial court entered judgment based on Davila's election to recover under the DTPA and the jury's findings.

On appeal, Valley Nissan raises twenty issues attacking the legal and factual sufficiency of the evidence supporting the jury's findings. For the following reasons, we affirm the judgment of the trial court.

## I. BACKGROUND

On November 21, 1996, Davila and her common-law husband Juan G. Rodriguez ("Rodriguez") went to Valley Nissan in Harlingen, Texas to purchase a new pickup truck. They met with Ray Galvan ("Galvan"), a Valley Nissan salesman and longtime acquaintance of Davila. Rodriguez and Davila selected a new truck with an $11,000 sticker price. However, Rodriguez and Davila were unable to qualify for financing on the truck. They subsequently selected a used 1995 Nissan pickup truck with a much lower sticker price. Galvan agreed to accept Rodriguez's truck as a trade-in and allowed $1,600.00 against the purchase price as down payment.

Davila advised Galvan she would finance the purchase of the truck under her name because Rodriguez had poor credit. Later that same afternoon, Davila received, via fax, financing information from Galvan. The following day, Galvan phoned Davila to inform her that her financing had been approved and she should come to the dealership to purchase the truck.

Two days later, on November 23, 1996, Davila and Rodriguez went to Valley Nissan to pick up the vehicle and to trade in Rodriguez's old Toyota pickup truck as down payment. Davila finalized the sale by filling out other documentation. The retail contract stated she was to begin making monthly payments on January 7, 1997. When she did not receive the payment booklet in December, Davila and Rodriguez attempted to make payments directly to Valley Nissan on several occasions. Each time, Valley Nissan's employees declined the tendered payments and instructed them to await the arrival of the payment booklet.

In February 1997, Davila received legal title to the truck in her name. Two months later, on April 18, 1997, Valley Nissan's used car manager Robert Trevino contacted Davila and Rodriguez and asked them to come to the dealership to discuss a matter. While there, Davila was informed her financing had not been approved after all and that she would have to give an additional down payment, obtain a co-signor, or obtain other financing. After Davila rejected those options, she was told that if she left the premises with the truck, they would call the police and charge her with theft. Davila requested and received a signed acknowledgment from Valley Nissan that they were retaining the pickup truck. Rodriguez's request for return of his trade-in truck was denied because Valley Nissan had sold the truck to a wholesaler from Mexico.

Subsequently, Davila sued Valley Nissan for violations of the DTPA, common law fraud, negligence, negligent misrepresentation, and breach of contract. The jury found in favor of Davila on all theories presented to it. Davila elected to recover damages under the DTPA.

On appeal, Valley Nissan challenges nearly all the findings in favor of Davila. Because the judgment granted relief under the DTPA, we will examine only those jury

findings that give support to the awards actually reflected in the judgment rendered by the trial court. Accordingly, we will not address issues pertaining only to the other theories of recovery because they are not "necessary to final disposition of the appeal."[2] Tex.R.App. P. 47.1.

## II. ANALYSIS

### A. Standard of Review

When both legal and factual sufficiency issues are raised, we must first review the legal sufficiency to determine if there is any evidence of probative value to support the jury's findings. *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Review of legal sufficiency of evidence requires the reviewing court to consider only evidence and inferences that tend to support the jury's findings and to disregard all evidence and inferences to the contrary. *Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex.1988). When there is more than a scintilla of evidence, the reviewing court may not overturn the jury's findings on legal sufficiency grounds. *Id.*

If the findings are supported by legally sufficient evidence, we must then review the factual sufficiency of the evidence by weighing and considering the evidence both in support of and contrary to the challenged findings. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996). The jury's findings must be upheld unless they are so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Id.*

Valley Nissan's various issues will be grouped into two categories: those pertaining to the finding of liability and those pertaining to damages. We turn first to the issues pertaining to liability under the DTPA.

### B. Liability under the DTPA

In its argument on issues sixteen and seventeen,[3] Valley Nissan makes two contentions regarding the finding of liability under the DTPA: (1) the DTPA does not apply to Davila's claim because her claim is merely one for breach of contract; and (2) Davila provided insufficient evidence that Valley Nissan violated the DTPA. We reject both contentions.

### 1. Ability to Recover under the DTPA

First, Valley Nissan contends Davila's DTPA claim cannot be maintained because the losses she complained of were purely economic losses related to the performance and the subject matter of the contract, which were recoverable only under a breach of contract claim. Valley Nissan relies on *Ashford Dev., Inc. v. USLife Real Estate Servs. Corp.*, 661 S.W.2d 933, 935 (Tex.1983). In that case, Ashford Development needed financing for a planned construction project and paid USLife to obtain financing on Ashford Development's terms. *Id.* When no satisfactory lender emerged, Ashford Development sued US-Life to recover the fee paid and also alleged violations of the DTPA. The court held an allegation of a mere breach of contract, without more, does not constitute

---

**2.** We do not address Valley Nissan's issues nine through fifteen and eighteen. These issues address the jury's findings on fraud, gross negligence, malice, a $25,000.00 award based on a finding of knowing conduct, and exemplary damages. Because Davila elected to recover under the DTPA, none of these findings were relied on in the trial court's final judgment.

**3.** A portion of the argument on these two issues is devoted to the jury's finding on fraud. For the reasons stated above, we do not address this portion of Valley Nissan's argument.

a "false, misleading or deceptive act" in violation of the DTPA. *Id.*

The present case is distinguishable from *Ashford Development*. In that case, the contract between the two parties was based on USLife searching for and obtaining satisfactory financing. The only conduct complained of was USLife's inability to obtain financing as required under the contract.

In the present case, however, the contract between Davila and Valley Nissan is not a contract to obtain financing. The contract states it is a contract between the "Buyer: Jessica Davila" and the "Creditor: Valley Nissan" for the purchase of a vehicle. Further, in her fourth amended petition, Davila generally alleged Valley Nissan entered into a contract with Davila to provide her with a 1995 Nissan Regular Cab pick-up truck. She did not allege Valley Nissan contracted with her to obtain financing.

The present case is similar to *Lone Star Ford, Inc. v. Hill*, 879 S.W.2d 116 (Tex. App.-Houston [14th Dist.] 1994, no writ). In *Lone Star*, the plaintiff sued Lone Star for damages after Lone Star sold him a used car that had already been sold to someone else. *Id.* at 117. Lone Star's salesman induced the plaintiff into the sale by failing to disclose that the previous buyer had not cancelled the purchase of the car. *Id.* The court in *Lone Star* upheld the plaintiff's recovery for violation of the DTPA because the evidence showed the defendant engaged in deceptive or misleading acts, in addition to any breach of contract claim. *Id.*

Here, as in *Lone Star*, Davila's factual allegation giving rise to her DTPA claim is not that Valley Nissan failed to perform under the purchase contract. Rather, she alleged Valley Nissan induced Davila into the sale of the truck by falsely stating she was approved for financing at the time she entered into the contract with Valley Nis-

san. As discussed in more detail below, Davila provided evidence to support this allegation. Because she alleged more than mere breach of contract, *Ashford Development* does not control here.

### 2. Sufficiency of Evidence Supporting Liability

 Second, Valley Nissan contends Davila provided no evidence supporting liability under subsections 17.46(b)(5), (b)(12), and (b)(14) of the DTPA, the sections Davila invoked in her petition. Sufficiency of the evidence must be examined in view of questions and instructions submitted in the jury charge. *Larson v. Cook Consultants, Inc.*, 690 S.W.2d 567, 568 (Tex.1985).

Here, the jury answered yes to the following question:

Question 5

Did Nissan engage in any false, misleading, or deceptive act or practice that Davila relied onto [sic] her detriment and that were the producing cause of damages to Davila?

\* \* \*

"False, misleading, or deceptive acts or practices" means any of the following: 1) representing that goods or services had characteristics which they did not have, 2) representing that an agreement confers or involves rights, remedies, obligations which it does not have or involve or 3) misrepresenting the authority of a salesman, representative or agent to negotiate the final terms of a consumer transaction.

This definition of "false, misleading, or deceptive acts or practices" corresponds with the three subsections under which Davila brought her DTPA claim. Under this definition, the jury needed to find evidence of only one of these three types of acts or practices. Our review of the record re-

veals Davila presented evidence of all three.

### a. Section 17.46(b)(5)

Section 17.46(b)(5) of the Texas Business and Commerce Code states that false, misleading, or deceptive acts include:

representing that goods or services have sponsorship, approval, characteristics ... which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not.

TEX. BUS. & COM.CODE ANN. § 17.46(b)(5) (Vernon 2002).

Davila provided evidence supporting a finding under this section. Davila testified that Galvan called her on November 22, 1996, to tell her she was approved for financing and to come in to purchase the truck. However, Catarino Alfaro, the finance manager at Valley Nissan testified that, on that date, Davila had not been approved for financing. Further, the Credit Lender Reports from Primus Automotive Financial Services, which were received into evidence, establish that on November 21, 1996, Davila had not been approved for financing. A memo from Primus Automotive Financial Services to Valley Nissan dated November 29, 1996, which also was received into evidence, states "customer does not qualify." Gregg Geil, the credit supervisor for Primus Automotive Financial Services, testified Primus never approved financing for Davila for the 1995 Nissan truck in November.

### b. Section 17.46(b)(12)

Section 17.46(b)(12) states a false, misleading, or deceptive act or practice includes:

representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law. *Id.* § 17.46(b)(12).

Davila also provided evidentiary support for a finding under this section. Plaintiff's exhibit one, the contract on the sale of the car, states payments are to begin on January 7, 1997. Davila testified when she did not receive her coupon booklet in December she called the sales manager at Valley Nissan, who told her she would be receiving it soon. She further testified she called Valley Nissan again in February, and she went to Valley Nissan several times in order to make payments. Mike Galvan, an employee of Valley Nissan, told Davila that Valley Nissan did not want to be responsible for the money, and she should just wait for the booklet.

### c. Section 17.46(b)(14)

Third, Valley Nissan claims Davila presented no evidence to support a jury finding that Valley Nissan violated section 17.46(b)(14) of the DTPA. Section 17.46(b)(14) states false, misleading, or deceptive acts or practices include:

misrepresenting the authority of a salesman, representative or agent to negotiate the final terms of a consumer transaction.

*Id.* § 17.46(b)(14).

Davila provided evidence in support of a finding under this subsection as well. Davila testified, at the time she signed the agreements, no one explained the terms of the agreement to her. She testified Galvan told her she was approved for financing. Galvan testified that as a sales representative, he does not structure any part of the financing for the transaction. He also testified the general manager is the one who decides who gets approved for financing. However, Galvan called Davila and told her she had been approved and to come in and sign a contract. This is evidence that Valley Nissan depicted Galvan

as having the authority to approve credit applications and rely on such statements in order to negotiate the final terms of the contract.

We conclude the evidence provided more than a scintilla of evidence supporting a finding that Valley Nissan violated the DTPA. *See Sherman,* 760 S.W.2d at 242. The jury's finding was not against the great weight and preponderance of the evidence. *See Ortiz,* 917 S.W.2d at 772.

## C. Damages

Valley Nissan makes various challenges to the sufficiency of the evidence supporting the jury's findings on damages. Not all of Valley Nissan's damage-related contentions pertain to the damages the trial court awarded in the judgment. To understand which findings were incorporated in the trial court's final award, we summarize several of the jury's findings and the trial court's award.

Among its findings, the jury concluded: (1) $15,314.46 would compensate Davila for her damages resulting from the breach of contract or negligence; (2) $1,000.00 would compensate her for her damages resulting from the negligent misrepresentation; (3) $2,500.00 would compensate her for her pain and mental anguish; (4) $7,500.00 would compensate her for her loss of use of the truck; and (5) reasonable fees for her attorneys would be (a) $15,000.00 for the trial, (b) $10,000.00 for an appeal to the court of appeals, and (c) $7,000.00 for an appeal to the Texas Supreme Court.

In its judgment, the trial court noted Davila elected to recover damages under the DTPA and awarded:

(1) $78,946.38 for actual damages,

(2) $23,683.91 for prejudgment interest, and

(3) $32,000.00 for attorney's fees.

Although the trial court did not explain how it reached the calculation of the actual damages, examination of the jury's findings shows that the amount was based on the following calculation:

| | $15,315.46 | damages for breach of contract or negligence |
|---|---|---|
| | 1,000.00 | damages for negligent misrepresentation |
| | 2,500.00 | damages for pain and mental anguish |
| + | 7,500.00 | damages for loss of use of the truck |
| | $26,315.46 | |
| × | 3.00 [4] | |
| | $78,946.38 | |

We note Valley Nissan did not challenge the trial court's calculation of damages. Thus, we do not address the propriety of the court's calculations here. Rather, we use the calculations to determine which of the jury's findings were used by the trial court and need to be addressed on appeal.

4. The court's multiplication of the total damages times three is based on section 17.50(b)(1) of the DTPA, which allows a consumer to recover up to three times the amount of economic damages if the trier of fact finds the defendant acted knowingly or three times the sum of the economic damages and mental anguish if the trier of fact finds the defendant acted intentionally. Tex. Bus. & Com.Code Ann. § 17.50(b)(1) (Vernon 2002).

Valley Nissan raises several issues pertaining to the findings leading to the judgment: (1) the jury was not asked to award Davila economic damages under the DTPA; and (2) the jury's findings on other damages were not supported by the evidence. We turn first to the issue of economic damages.

### 1. Economic Damages under the DTPA

■ Valley Nissan contends Davila cannot be awarded damages under the DTPA because the jury was not asked to award economic damages arising out of the DTPA violation. In the alternative, Valley Nissan argues the damages Davila sought were solely contract damages and not economic damages. We disagree on both counts.

■ A consumer who prevails in a claim brought under the DTPA may recover economic damages. TEX. BUS. & COM.CODE ANN. § 17.50(b)(1) (Vernon 2002). We note that it was Davila's "burden to obtain affirmative answers to jury questions as to the necessary elements" of her cause of action. *Ramos v. Frito–Lay, Inc.*, 784 S.W.2d 667, 668 (Tex.1990). Additionally, if an entire theory were omitted from the charge it would be waived; and the defendant would have no duty to object. TEX.R. CIV. P. 279; *see Strauss v. LaMark*, 366 S.W.2d 555, 557 (Tex.1963). Where, however, an issue is omitted that constitutes only a part of a ground of recovery, the omitted issue is deemed found in support of the judgment if no objection or specific findings are made and the presumed finding is supported by some evidence. TEX.R. CIV. P. 279; *see Strauss*, 366 S.W.2d at 557.

■ Valley Nissan is correct that the jury was not given a specific question asking them to calculate economic damages under the DTPA. However, the jury answered yes to the question asking whether Valley Nissan had engaged in false, mis-leading, or deceptive acts or practices. Although the jury was not explicitly asked about economic damages arising from the violation, the jury was asked the following question, which referred to the jury's findings on the DTPA violation and fraud:

Question 9

What sum of money, if any, in addition to actual damages, should be awarded to Davila because any of such conduct was committed knowingly?

The jury answered $25,000.

■ Implicit in that finding is an acknowledgment that Davila suffered actual damages. As such, the issue of damages necessary to establish Davila's DTPA claim was raised in the questions submitted to the jury. We further note that Valley Nissan did not object, nor did it request specific findings by the trial court. As such, if the omitted element of actual damages is supported by some evidence, we must deem it found against Valley Nissan under rule 279. *See Ramos*, 784 S.W.2d at 668; *Payne v. Snyder*, 661 S.W.2d 134, 142 (Tex.App.-Amarillo 1983, writ ref'd n.r.e.).

■ The evidence presented at trial supports the presumed finding that Davila suffered economic damages as a result of the violation. She testified that in reliance on the statement, she traded another vehicle and purchased the Nissan truck. She then was forced to return the truck. Valley Nissan did not return her trade-in. The jury also heard testimony about the replacement value of the Nissan truck and loss of use of the truck.

Valley Nissan contends Davila never sought economic damages in her pleadings. It concedes Davila sought loss of the fair market value of her trade-in; loss of time, energy, and out-of-pocket expenses; and mental anguish. However, it contends these are contract damages.

■ The term "economic damages" is defined by the DTPA as "compensatory damages for pecuniary loss, including costs of repair and replacement." TEX. BUS. & COM.CODE ANN. § 17.45(11) (Vernon 2002). Whether the damages Davila sought can be categorized as contract damages is not relevant here. With the exception of her claim for damages based on loss of time and energy and mental anguish, the damages sought fall squarely within the DTPA's definition of "economic damages."

Thus, given the questions posed to the jury and the evidence presented at trial, we conclude the issue of economic damages was found in such a manner as to support the judgment. We now turn to Valley Nissan's challenges to the jury's damage findings.

## 2. The Jury's Damage Findings

We limit our review to Valley Nissan's issues pertaining to those jury findings on which the trial court based its judgment. That is, we will consider the sufficiency of the evidence pertaining to the jury's findings on the amount of damages Davila should receive for: (1) breach of contract or negligence, (2) negligent misrepresentation, (3) mental anguish, (4) loss of use of the car, and (5) attorney's fees.

■ Section 17.50(b)(1) of the DTPA provides:

(b) In a suit filed under this section, each consumer who prevails may obtain:
(1) the amount of economic damages by the trier of fact. If the trier of fact finds the conduct of the defendant was committed knowingly, the consumer may also recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award no more than three times the amount of economic damages; or if the trier of fact finds the conduct was committed intentionally, the consumer may recover damages for mental anguish, as found by the trier of

fact, and the trier of fact may award not more than three times the amount of damages for mental anguish and economic damages.

*Id.* § 17.50(b)(1). Actual or economic damages are those recoverable at common law. *Farrell v. Hunt*, 714 S.W.2d 298, 300 (Tex.1986). At common law, actual damages can be either direct or consequential. *Henry S. Miller Co. v. Bynum*, 836 S.W.2d 160, 163 (Tex.1992) (Phillips, C.J., concurring). Direct damages compensate for the loss, damage, or injury that is conclusively presumed to have been foreseen or contemplated by the party as a consequence of his breach of contract or wrongful act. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex.1997). Consequential damages, on the other hand, are those damages which result naturally, but not necessarily, from the acts contemplated. *Haynes & Boone v. Bowser Bouldin, Ltd.*, 896 S.W.2d 179, 182 (Tex.1995).

### a. Damages for Breach of Contract or Negligence

■ In issue one, Valley Nissan contends there was no evidence or factually insufficient evidence to support the damage award of $15,315.46 for breach of contract and negligence. When the damages issue is submitted to the jury in broad-form, as it was in the instant case, it is difficult to ascertain with certainty what amount of the award is attributable to each element considered. *City of Port Isabel v. Shiba*, 976 S.W.2d 856, 858 (Tex.App.-Corpus Christi 1998, writ denied); *Greater Houston Transp. Co. v. Zrubeck*, 850 S.W.2d 579, 589 (Tex.App.-Corpus Christi 1993, writ denied). If one element is supported by the evidence, the damages award must be affirmed. *City of Port Isabel*, 976 S.W.2d at 859.

■ The proper measure of recovery for a breach of contract claim is the loss or

damage actually sustained. *Stewart v. Basey*, 150 Tex. 666, 245 S.W.2d 484, 486 (1952). The proper measure of recovery has also been stated as the amount that the injured party would have to expend to make himself whole. *Mozer v. Goolsbee*, 293 S.W.2d 91, 98 (Tex.Civ.App.-Waco 1956, writ ref'd n.r.e.).

In the present case, Davila contracted for the purchase of a pick-up truck. The particular truck she contracted to purchase was two years old at the time of purchase. Evidence introduced at trial showed that $15,315.46 was the deferred purchase price for the truck. This amount was the exact amount awarded by the jury in response to question 4, which asked, "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Jessica Davila, for her damages, if any, that resulted from Nissan's breach of contract or negligence."

After reviewing the evidence in its entirety, we conclude that the jury's determination that Davila suffered compensable loss does not go against the great weight and preponderance of the evidence. We further recognize that had the jury awarded this same amount under a theory of negligence, the measure of damages could be the same. *See Nelson v. Krusen*, 678 S.W.2d 918, 924–25 (Tex.1984) (basic rule of tort compensation is that plaintiff is to be put in position he would have been in absent defendant's negligence).

Appellant's first issue is overruled.

### b. Damages for Negligent Misrepresentation

■ In issues two through four, Valley Nissan challenges the award of damages given for negligent misrepresentation. The applicable jury questions concerning negligent misrepresentation read as follows:

Question 11

Did Nissan make negligent misrepresentations on which Davila justifiably relied?

Negligent Misrepresentation occurs when—

a) a party makes a representation in the course of his business or in a transaction in which he has a pecuniary interest,

b) the representation supplies false information for the guidance of others in their business, and

c) the party making the representation did not exercise reasonable care or competence in obtaining or communicating the information.

Answer "YES" or "NO"

Question 12

What sum of money, if any, if paid now in cash, would fairly and reasonable compensate Jessica Davila, for her damages resulting from Nissan's negligent misrepresentation?

Answer in dollars and cents for damages, if any.

Valley Nissan specifically argues that Davila failed to offer any proof of economic injury independent of contract damages and as such the damages represent double recovery. Valley Nissan further contends that there was no evidence presented at trial to substantiate a question concerning negligent misrepresentation nor was there evidence supporting the award in the amount of $1,000.00.

In *Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442–43 (Tex.1991), the Texas Supreme Court adopted the independent injury requirement of section 552B of the Second Restatement of Torts. *See* RESTATEMENT (SECOND) OF TORTS § 552B (1977). The requirement places a burden on the party bringing the claim to establish an injury independent of the loss of the benefit of the contract. *Id.* "Repu-

diating the independent injury requirement for negligent misrepresentation claims would potentially convert every contract interpretation dispute into a negligent misrepresentation claim." *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.,* 973 S.W.2d 662, 664 (Tex.1998).

Evidence presented at trial shows Davila met her burden of proving independent injury. Davila delivered title and possession of a trade-in vehicle to Valley Nissan. This delivery was made pursuant to Valley Nissan's representations that they would provide Davila with the new truck and financing for the truck. Testimony presented at trial showed Galvan valued the trade-in at $1,600.00. Davila's loss of this amount was an injury independent of the contract damages. From this evidence we hold that Davila met her burden of proving the independent injury required under section 552B of the Restatement.

With respect to Valley Nissan's challenge to the amount of the award, we again consider the evidence of the trade-in value of the vehicle. Because the jury heard evidence that Galvan valued the vehicle at $1,600, we hold that the jury could have found that Davila suffered at least $1,000 in pecuniary damages in reliance upon Valley Nissan's false misrepresentations. Issues two through four are overruled.

### c. Knowingly

■ Valley Nissan argues in issues sixteen and seventeen that the evidence is insufficient to support the jury's finding that Valley Nissan acted knowingly, and the court erred in submitting the question of "knowingly" to the jury. A finding that the defendant acted knowingly is a prerequisite to an award for mental anguish under the DTPA. Tex. Bus. & Com.Code Ann. § 17.50(b)(1) (Vernon 2002).

The applicable question, which referred to previous questions concerning Valley Nissan's liability for fraud and under the DTPA, read as follows:

Question 8

Did Nissan engage in any of the conduct described in Question 5 or 6 knowingly? "Knowingly" means an actual awareness at the time of conduct of the falsity, deception, or unfairness of the conduct in question or actual awareness of the conduct constituting a failure to comply with a warranty. Actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

In answering this question, consider [whether] the conduct that you have found was a producing cause of damages, if any, to Davila.

Answer "yes" or "no".

At trial, testimony and evidence presented showed that Valley Nissan affirmatively represented to Davila it had obtained financing for the purchase. Additionally, testimony from Valley Nissan employees revealed the dealership, in the regular course of business, routinely delivered possession of the vehicles to customers without confirming whether financing had been approved. Further, Valley Nissan caused Davila to justifiably assume that the representation was true when it placed record title to the vehicle in her name. The record discloses sufficient evidence of objective manifestations from which the jury could reasonably infer actual awareness that the representations were knowingly made by Valley Nissan.

We hold that the evidence presented at trial demonstrating Valley Nissan's actions provides support for the jury's finding that Valley Nissan acted "knowingly." We conclude there was more than a scintilla of evidence for the jury to decide that Davila suffered compensable damages from Valley Nissan's actions that were conducted knowingly. *See Sherman,* 760 S.W.2d at

242. In addition, after reviewing the evidence in its entirety, we conclude that the jury's determination that Davila suffered compensable loss does not go against the great weight and preponderance of the evidence. *See Ortiz*, 917 S.W.2d at 772.

We therefore overrule issues sixteen and seventeen.

#### d. Damages for Mental Anguish

In issues seven and eight, Valley Nissan argues that the trial court erred in submitting question 13 to the jury because there was insufficient evidence presented at trial concerning mental anguish. Valley Nissan further argues that there was insufficient evidence at trial to support the jury's award of $2,500.00 for mental anguish. The applicable question states:

Question 13

What sum of money would have fairly and reasonably compensate[d] Davila for—

A. Pain and mental anguish.

"Pain and mental anguish" means the conscious physical pain and emotional pain, torment, and suffering experienced by Davila as a result of the occurrence in question.

Do not reduce the amount, if any, in your answer because of the negligence, if any, of Davila.

Answer in dollars an cents for damages, if any.

To survive a legal sufficiency challenge, a plaintiff must present direct evidence of the nature, duration, and severity of his mental anguish, which establishes a substantial disruption in his daily routine. *Latham v. Castillo*, 972 S.W.2d 66, 69 (Tex.1998); *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex.1995). If there is no direct evidence, we must apply traditional no evidence standards to determine whether the record reveals any evidence of a high degree of mental pain and

distress that is more than mere worry, anxiety, vexation, embarrassment, or anger, to support an award of damages. *Latham*, 972 S.W.2d at 70; *Parkway Co.*, 901 S.W.2d at 444. Mental anguish also includes mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair, and public humiliation. *Parkway Co.*, 901 S.W.2d at 444.

Davila testified, "They humiliated me in front of their employees and threatened to call the cops if we left with the truck and kind of rushed us to hurry up and get our stuff out and watched us do it. . . . They used vulgar language towards Mr. Rodriguez and I." Further, Davila testified they had no way to get home, and had to call someone to come them up.

We hold that the evidence presented at trial which showed the public humiliation of having one's truck repossessed provides some evidence to support the jury's finding on mental anguish. *See id.* In reviewing only the evidence and inferences that tend to support the jury's findings, we conclude that there was more than a scintilla of evidence for the jury to decide that Davila suffered compensable mental anguish. *See Sherman*, 760 S.W.2d at 242. In addition, after reviewing the evidence in its entirety, we conclude that the jury's determination that Davila suffered compensable mental anguish does not go against the great weight and preponderance of the evidence. *See Ortiz*, 917 S.W.2d at 772.

Appellant's seventh issue is overruled.

Next, we must determine whether the evidence is both legally and factually sufficient to support the amount awarded for mental anguish. We give discretion to the jury in setting the amount awarded because it is best suited to determine whether and to what extent the defendant's conduct caused compensable mental anguish. *GAB Bus. Servs., Inc. v.*

*Moore,* 829 S.W.2d 345, 350 (Tex.App.-Texarkana 1992, no writ). In addition to the evidence of compensable mental anguish, there must also be some evidence to justify the amount awarded. *Saenz v. Fidelity & Guar. Ins. Underwriters,* 925 S.W.2d 607, 614 (Tex.1996). Translating mental anguish into a dollar amount is a difficult task. Thus, juries must be given a measure of discretion in finding damages; however, that discretion is not unlimited. *Id.* Juries must find an amount that would reasonably compensate for the loss. *Id.* Although reasonable compensation is an elusive concept, finders of fact are charged with calculating such a sum. *Id.*

■■■ In reviewing the damages awarded for mental anguish, we require only that the amount awarded compensate the aggrieved party in a fair and reasonable way. *Id.* Having thoroughly reviewed the facts upon which the jury based its award, we conclude that on these facts an award of $2,500.00 is not unreasonable. Accordingly, we overrule Valley Nissan's eighth issue.

### e. Loss of Use of the Vehicle

■■■ In issues five and six, Valley Nissan claims there was no evidence or insufficient evidence to support a jury award for loss of use of the vehicle, and the court erred in submitting the question of loss of use to the jury.

As noted above, in its definition of "economic damages," the DTPA allows compensatory damages for pecuniary loss, including costs and repair and replacement. TEX. BUS. & COM.CODE ANN. § 17.45(11) (Vernon 2002). After reviewing the record, there is testimony by both Davila and Rodriguez, that Davila did in fact use the truck. Both Davila and Rodriguez testified that she used the truck for trips to the grocery store, to the movies, and to the mall. The record shows Davila and Rodriguez purchased another truck soon after

Valley Nissan repossessed the truck, due to Rodriguez's livelihood as a delivery truck driver.

We hold that the evidence presented at trial demonstrating Davila's use of the truck provides some evidence to support the jury's finding on loss of use. In reviewing only the evidence and inferences that tend to support the jury's findings, we conclude that there was more than a scintilla of evidence for the jury to decide that Davila suffered compensable damages for loss of use of his vehicle. *See Sherman,* 760 S.W.2d at 242. In addition, after reviewing the evidence in its entirety, we conclude that the jury's determination that Davila suffered compensable loss of use damages does not go against the great weight and preponderance of the evidence. *See Ortiz,* 917 S.W.2d at 772.

Accordingly, issues five and six are overruled.

### f. Attorney's Fees

■■■ In its nineteenth issue, Valley Nissan contends the trial court erred in submitting the question regarding attorney's fees to the jury because Davila did not follow the prerequisites to recover attorney's fees for a contract action pursuant to section 38.002 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.002 (Vernon 1997). We need not address this issue because Davila elected to recover under the DTPA, and the DTPA allows recovery for attorney's fees. TEX. BUS. & COM.CODE ANN. § 17.50(d) (Vernon 2002). Accordingly, issue nineteen is overruled.

In its twentieth issue, Valley Nissan asserts the evidence was legally and factually insufficient to support the award of attorney's fees because Davila did not present any evidence of a contractual agreement between herself and the attorneys who

represented her at trial and the reasonableness of the fees. We disagree.

At trial, Mr. Ron Armstrong testified that he was the lead attorney on the case and had retained Mr. Cisneros and Mr. Mattingly to try the case. From this testimony the jury could have properly inferred that a contract for legal services existed between Davila and Mr. Armstrong, Mr. Cisneros, and Mr. Mattingly.

Further, section 17.50(d) mandates that, each consumer who prevails shall be awarded court costs and reasonable and necessary attorney's fees. *Id.* § 17.50(d). Thus, the only question for the jury was the reasonable value of the attorney's fees and not whether the attorney's fees should be awarded. *Id.*

An award of attorney's fees must be reasonable. *David McDavid Pontiac, Inc. v. Nix,* 681 S.W.2d 831, 838 (Tex.App.-Dallas 1984, writ ref'd n.r.e.). The reasonableness of attorney's fees is a fact question and must be supported by competent evidence, except where the reasonableness may be presumed. *Smith v. Smith,* 757 S.W.2d 422, 424 (Tex.App.-Dallas 1988, writ denied). An attorney's testimony concerning the time spent and the attorney's hourly charge is considered reasonably sufficient evidence under the DTPA to support an attorney's fee award. *Id.* at 426–27; *David McDavid Pontiac,* 681 S.W.2d at 838.

In this case, Davila's lead attorney testified regarding the amount and reasonableness of their fees. This testimony included time spent on the case, the hourly rate, and costs to appeal the case to the court of appeals and the Supreme Court of Texas. Additionally, Valley Nissan's attorney testified he spent an almost equivalent amount of time on the case, had the same hourly rate as Davila's attorneys, and stated similar figures to appeal the case. Based on this testimony, the jury awarded attorney's fees of $32,000.00. After re-viewing the record in this case, we conclude the evidence supplies a basis for the jury's finding of attorney's fees and that the jury's award was not unreasonable. *David McDavid Pontiac,* 681 S.W.2d at 838.

We overrule Valley Nissan's final issue.

## III. CONCLUSION

Accordingly, this Court AFFIRMS the judgment of the trial court.