IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00049-CV

 

Bossier Chrysler-Dodge II, Inc. 

d/b/a Bossier Country,

                                                                      Appellant

 v.

 

James Riley,

                                                                      Appellee

 

 

 



From the 77th District Court

Freestone County, Texas

Trial Court No. 03-158-A

 



Opinion



 








          Bossier Chrysler-Dodge II, Inc. dba
Bossier Country filed suit against James Riley alleging that Riley had breached
the parties’ contract by failing to deliver his Ford pick-up as a trade-in for
a used PT Cruiser Riley had allegedly purchased.  Riley counterclaimed alleging
that Bossier Country committed fraud and DTPA violations.  A jury refused to
find that Bossier Country and Riley had a contract but did find that Bossier
Country committed fraud and DTPA violations as alleged.  The jury awarded Riley
damages for these claims and awarded additional damages after finding that
Bossier Country acted knowingly.

          Bossier Country contends in five
issues that: (1) there is no evidence or factually insufficient evidence that
Bossier Country made a misrepresentation to Riley or failed to disclose
information to him; (2) there is no evidence or factually insufficient evidence
of detrimental reliance; (3) there is no evidence or factually insufficient
evidence that Bossier Country acted knowingly; (4) the court erred by failing to
cap the jury’s award for mental anguish damages at three times the amount of
economic damages awarded under section 17.50(b)(1) of the DTPA; and (5) the
court erroneously calculated prejudgment and postjudgment interest at the rate
of 10% per annum.  We will modify the judgment to recite the correct rates of
prejudgment and postjudgment interest and affirm the judgment as modified.

Misrepresentation/Failure to Disclose

          Bossier Country contends in its first
issue that there is no evidence or factually insufficient evidence that it made
a misrepresentation to Riley or failed to disclose information to him.

          When we conduct a no-evidence review,
we must determine “whether the evidence at trial would enable reasonable and
fair-minded people to reach the verdict under review.”  City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).  We “must credit favorable evidence
if reasonable jurors could, and disregard contrary evidence unless reasonable
jurors could not.”  Id.

          When considering a factual sufficiency
challenge  .  .  .  regarding an issue on which the appellant did not have the
burden of proof, we must consider and weigh all of the evidence, not just the
evidence that supports the verdict.  We may not pass upon the witnesses’
credibility or substitute our judgment for that of the [factfinder], even if
the evidence would clearly support a different result.  We will set aside the
verdict only if it is so contrary to the overwhelming weight of the evidence
that the verdict is clearly wrong and unjust.  Reversal can occur because the
finding was based on weak or insufficient evidence or because the proponent’s
proof, although adequate if taken alone, is overwhelmed by the opponent’s
contrary proof.

 

Checker Bag Co. v. Washington, 27 S.W.3d 625, 633 (Tex. App.—Waco 2000, pet.
denied) (citations omitted).

          “The amount of evidence necessary to
affirm a judgment is far less than that necessary to reverse a judgment.”  Pulley
v. Millberger, 198 S.W.3d 418, 427 (Tex. App.—Dallas 2006, pet. denied); Huynh
v. Nguyen, 180 S.W.3d 608, 615 (Tex. App.—Houston [14th Dist.] 2005, no
pet.).

          Riley alleged that Bossier Country
violated the DTPA by:

representing that an agreement conferred or
involved rights, remedies, or obligations which it did not have or involve, or
which are prohibited by law; and

 

failing to disclose information concerning goods
or services which was known at the time of the transaction and such failure to
disclose was intended to induce the consumer into a transaction into which the
consumer would not have entered had the information been disclosed.

 

See
Tex. Bus. & Com. Code Ann. § 17.46(b)(12),
(24) (Vernon Supp. 2006).

          Here, Riley testified that he went to Bossier
Country on the morning in question looking for a more fuel efficient vehicle.  Bossier
Country salesperson Jason Banks helped Riley find a used PT Cruiser which he decided
he wanted to buy.  Banks and Riley negotiated a tentative agreement for Riley
to buy the PT Cruiser for $15,999, for Bossier Country to give Riley $6,000 for
his Ford pick-up, and for the balance to be financed for 36 months with monthly
payments of $329.  In accordance with this tentative agreement, Riley signed a Motor
Vehicle Purchase Order (“MVPO”) and a Conditional Sale and Delivery Agreement.

          The MVPO does not contain any finance
terms but provides in pertinent part:

THIS ORDER IS NOT A BINDING CONTRACT.  DEALER
SHALL NOT BE OBLIGATED TO SELL UNTIL APPROVAL OF THE TERMS HEREOF IS GIVEN BY A
BANK OR FINANCE COMPANY WILLING TO PURCHASE A RETAIL INSTALLMENT CONTRACT BETWEEN
THE PARTIES HERETO BASED ON SUCH TERMS.  No contractual relationship is hereby
created.

 

          The Conditional Sale and Delivery
Agreement likewise contains no finance terms.  It provides in pertinent part:

          Buyer agrees to promptly complete the
purchase of the vehicle if financing is approved in accordance with the terms
described in the MVPO.  Buyer may cancel this agreement to purchase at any time
prior to receiving the notification of approval of financing.  If financing is
not approved on the proposed terms, Buyer has no obligation to purchase the
vehicle.

 

Riley testified that, consistent with the quoted
language, it was “specifically explained” to him that morning that under the
terms of the Conditional Sale and Delivery Agreement he would be able to back
out of the deal for the PT Cruiser.

          Riley drove home to Marquez to get the
title for his Ford.  He returned to Bossier Country in the middle of the
afternoon to finalize the purchase of the PT Cruiser.  He was taken to Bossier
Country’s finance department where he signed additional paperwork.[1] 
First, he decided to purchase a service contract which would provide extended
warranty coverage.  To accommodate this purchase, the parties executed a second
MVPO to include this additional expense.[2] 
This second MVPO also varies from the first because it lists Daimler Chrysler,
LLC as the lien holder, while the first MVPO did not show a lien holder.

          In addition, Riley signed a note
payable to Bossier Country (the “Retail Installment Contract”) to finance the
purchase.  The note requires 54 monthly payments of $321.68 and included a
clause assigning the note to Daimler Chrysler.  Riley testified that he did not
read the installment contract before signing it because “they said it was just
a standard contract.”  No one at Bossier Country explained to him that he would
no longer be able to back out of the deal after signing the installment
contract.  Rather, Riley testified that he signed “this one because I was told
I was safe to back out of the deal.”[3]

          Riley testified that after completing
this paperwork he returned home in his Ford to clean out the tool box before
trading it in.  After talking with his wife Eva about the deal, he decided to
not buy the PT Cruiser.  Riley called Banks “the same afternoon” and “told him
I had changed my mind about the deal.”

          The trial court admitted in evidence documentation
offered by Riley which indicates that Bossier Country received notification at
6:02 p.m. that Riley was approved for financing at a term of 48 months.  This
notification indicated that Daimler Chrysler would finance $10,781.70, which
was the amount to be financed before Riley decided to purchase the service
contract.

          Riley had purchased vehicles before so
he was “somewhat” familiar with this type of transaction.  However, he
testified that he “possibly” did not understand all the paperwork.

          Randy Pretzer testified that he has been
managing partner for Bossier Country twelve years but has been in the business
of selling automobiles longer.  Pretzer demonstrated in his testimony that he
has a thorough understanding of the various documents Riley signed on the date
in question and of the effect of those documents.

          Bossier Country first contends that
Riley’s claims are merely contract claims and are not actionable under the
DTPA.  A mere breach of contract is not actionable under the DTPA.  Rocky
Mountain Helicopters, Inc. v. Lubbock County Hosp. Dist., 987 S.W.2d 50, 53
(Tex. 1998); Crawford v. Ace Sign, Inc., 917 S.W.2d 12, 14 (Tex. 1996).  In a DTPA suit which involves a contract, the totality of the circumstances
surrounding the parties’ dealings should be examined, taking in consideration
all relevant factors including but not limited to:

·                   
whether the representation
was clearly factual, clearly interpretive, or some combination of the two;

 

·                   
whether the relevant
contractual language was ambiguous or unambiguous;

 

·                   
whether the parties were in
a substantially equal position of knowledge and information;

 

·                   
Whether there was evidence
of overreaching or victimizing;

 

·                   
Whether there was evidence
of unconscionable conduct; and

 

·                   
Whether there was a
confidential or fiduciary relationship between the parties.

 

Adler Paper Stock, Inc. v. Houston Refuse
Disposal, Inc., 930 S.W.2d 761,
765 & n.4 (Tex. App.—Houston [1st Dist.] 1996, writ denied); W. Anderson
Plaza v. Feyznia, 876 S.W.2d 528, 533 (Tex. App.—Austin 1994, no writ); accord
Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd., 896 S.W.2d 156, 162
(Tex. 1995) (court must consider “[t]he nature of the transaction and the totality
of the circumstances surrounding the agreement” to determine whether “as is”
clause defeats DTPA claim); Bynum v. Prudential Residential Servs., Ltd.
P’ship, 129 S.W.3d 781, 788-89 (Tex. App.—Houston [1st Dist.] 2004, pet.
denied) (same).

          Here, the representations at issue
involve Riley’s right to cancel and whether Daimler Chrysler had approved
financing for the transaction.  The representation contained in the Conditional
Sale and Delivery Agreement regarding Riley’s right to cancel is “clearly factual”
and is unambiguous.  However, a reasonable juror could also infer from Riley’s
testimony that Bossier Country later made a verbal representation that his
right to cancel continued even after he signed the installment contract.  This verbal
representation is “clearly interpretive” and renders the transaction ambiguous.

          Regarding the parties’ respective
bargaining positions and their understanding of the terms of the transaction, a
reasonable juror could readily infer that Bossier Country was in a superior
position on both counts.  Between the parties only Bossier Country knew when
financing was actually approved for Riley.

          The evidence that Bossier Country had
Riley sign the installment contract before financing was actually approved would
support a finding that Bossier Country engaged in unconscionable conduct.

          Accordingly, we conclude that Riley’s
claims do not seek recovery for a mere breach of contract and are therefore
actionable under the DTPA.  See Adler Paper Stock, 930 S.W.2d at 765; W.
 Anderson Plaza, 876 S.W.2d at 533.

          We now turn to the evidence pertinent
to Riley’s claim that Bossier Country made actionable misrepresentations.  See
Tex. Bus. & Com. Code Ann. § 17.46(b)(12). 
Riley testified that a Bossier Country representative told him financing had
been approved that afternoon when he signed the retail installment contract.  A
reasonable juror could infer from the evidence that this representation was
false because financing was not approved until later that evening.  

          Riley also testified that it was
“specifically explained” to him that he could cancel the deal under the terms
of the Conditional Sale and Delivery Agreement.  He signed the installment
contract “because I was told I was safe to back out of the deal,” and a
reasonable juror could infer from this testimony that a Bossier Country made
this verbal representation to Riley at the time he signed the installment
contract.  With these representations in mind, Riley called Banks “the same
afternoon” and “told him I had changed my mind about the deal.”  A reasonable
juror could infer from the testimony that Riley did so before Bossier Country
received approval of financing from Daimler Chrysler.  When Riley decided to
exercise this option however, Bossier Country failed to comply with the
representations it had made regarding Riley’s right to cancel.  

          For these reasons, we conclude that “the
evidence at trial would enable reasonable and fair-minded people” to find that Bossier
Country had made actionable misrepresentations.  See Valley Nissan, Inc. v.
Davila, 133 S.W.3d 702, 710 (Tex. App.—Corpus Christi 2003, no pet.); Apple
Imports, Inc. v. Koole, 945 S.W.2d 895, 898-99 (Tex. App.—Austin 1997, writ
denied); Gunn Buick, Inc. v. Rosano, 907 S.W.2d 628, 631 (Tex. App.—San Antonio 1995, no writ).

          The record contains conflicting
evidence which we address in connection with Bossier Country’s factual
sufficiency challenge.

          The evidence varies widely regarding
when Riley signed the installment contract and the other documents intended to
finalize the bargain.  Thus, there is evidence in the record to support a
finding that Riley did not sign these documents until after Daimler Chrysler
approved financing.  The question of when Riley signed these documents in
relation to Daimler Chrysler’s approval of financing required the jury to weigh
the conflicting evidence and evaluate the credibility of the witnesses.  We
must defer to the jury’s resolution of this disputed issue.  See Pulley,
198 S.W.3d at 426-27; Checker Bag, 27 S.W.3d at 633.

          The record contains conflicting
evidence, including internal inconsistencies in Riley’s own testimony, about
the nature of the representations Bossier Country made regarding his right to
cancel and when those representations were made.  The record also contains
disputed testimony regarding whether Riley tried to cancel the deal that same
afternoon.  Again, we must defer to the jury’s resolution of these issues which
turned on conflicting evidence and witness credibility.  Id.  Therefore,
the record contains factually sufficient evidence to support a finding that Bossier
Country made actionable misrepresentations.

          Some of the evidence recited
hereinabove also supports a finding that Bossier Country failed to disclose
information which was known at the time of the transaction and intended by such
failure to induce Riley to sign the retail installment contract, which he would
not have done had the information been disclosed.  See Tex. Bus. & Com. Code Ann. § 17.46(b)(24).

          A reasonable juror could infer from
the evidence that financing was not approved until after Bossier Country had
Riley sign the installment contract.  A reasonable juror could also infer from
the evidence that Bossier Country knew that financing had not yet been approved
when Riley signed this contract, that Bossier Country failed to disclose this
information so Riley would go ahead and sign the contract, and that Riley would
not have signed the contract if he had known that financing had not yet been
approved.

          Accordingly, we conclude that “the evidence
at trial would enable reasonable and fair-minded people” to find that Bossier
Country failed to disclose information and intended by such failure to induce
Riley to sign the retail installment contract.  See Lone Star Ford, Inc. v.
Hill, 879 S.W.2d 116, 119-20 (Tex. App.—Houston [14th Dist.] 1994, no
writ).

          The record contains conflicting
evidence about when financing was approved and when Riley signed the various
documents in his dealings with Bossier Country.  Thus, resolution of the issue
of whether Bossier Country failed to disclose information and intended by such
failure to induce Riley to sign the retail installment contract required the
jury to weigh the conflicting evidence and evaluate the credibility of the
witnesses.  We must defer to the jury’s resolution of this disputed issue.  See
Pulley, 198 S.W.3d at 426-27; Checker Bag, 27 S.W.3d at 633. 
Accordingly, the record contains factually sufficient evidence to support a
finding that Bossier Country failed to disclose information and intended by
such failure to induce Riley to sign the retail installment contract.  See
Lone Star Ford, 879 S.W.2d at 119-20.

          For these reasons, we hold that the
record contains some evidence and factually sufficient evidence to uphold the
jury’s findings that Bossier Country made an actionable misrepresentation to
Riley and failed to disclose information to him.  Therefore, we overrule Bossier
Country’s first issue.

 

Detrimental Reliance

          Bossier Country contends in its second
issue that there is no evidence or factually insufficient evidence that Riley
relied to his detriment on any misrepresentation or failure to disclose
information.

          Riley must prove detrimental reliance
to recover damages under the DTPA.  Tex.
Bus. & Com. Code Ann. § 17.50(a)(1)(B) (Vernon Supp. 2006); Henry
Schein, Inc. v. Stromboe, 102 S.W.3d 675, 693 (Tex. 2003); Daugherty v.
Jacobs, 187 S.W.3d 607, 615 (Tex. App.—Houston [14th Dist.] 2006, no
pet.).  He testified that he signed the installment contract “because I was
told I was safe to back out of the deal.”  This is evidence that “would enable
reasonable and fair-minded people” to find detrimental reliance.

          Bossier Country directs our attention
to evidence that Riley relied on his own unique interpretation of the right to
cancel provided by the Conditional Sale and Delivery Agreement.  It also
references language in an “Addendum” to the MVPO which provides that “any oral
agreement not reduced to writing will not be binding upon the dealership.”

          Such disclaimers render any prior oral
representations unenforceable absent proof of fraud, accident, or mistake.  See
Bossier Chrysler Dodge II, Inc. v. Rauschenberg, 201 S.W.3d 787, 803 (Tex. App.—Waco 2006, pet. filed); Balderson-Berger Equip. Co. v. Blount, 653 S.W.2d 902,
908 (Tex. App.—Amarillo 1983, no writ).  Here, Riley offered evidence that Bossier
Country fraudulently persuaded him to sign the installment contract by falsely
representing that financing had been approved and by failing to disclose
otherwise.  We have already determined that there is sufficient evidence to
support a finding that Bossier 








Country made such misrepresentations. 
Therefore, the disclaimer does not vitiate the misrepresentations on which
Riley testified he relied.  Id.

          Because the record contains some
evidence and factually sufficient evidence to uphold the jury’s finding of
detrimental reliance, we overrule Bossier Country’s second issue.

Knowing Conduct

          Bossier Country contends in its third
issue that there is no evidence or factually insufficient evidence that it
knowingly engaged in conduct that violated the DTPA.

          Riley must prove that Bossier Country
acted knowingly or intentionally to recover damages for mental anguish or
treble damages.  See Tex. Bus.
& Com. Code Ann. § 17.50(b)(1) (Vernon Supp. 2006).

          “Knowingly” means actual awareness, at
the time of the act or practice complained of, of the falsity, deception, or
unfairness of the act or practice giving rise to the consumer’s claim or, in an
action brought under Subdivision (2) of Subsection (a) of Section 17.50, actual
awareness of the act, practice, condition, defect, or failure constituting the
breach of warranty, but actual awareness may be inferred where objective
manifestations indicate that a person acted with actual awareness.  

 

Id.
§ 17.45(9) (Vernon 2002).

          “Actual awareness” does not mean
merely that a person knows what he is doing; rather, it means that a person
knows that what he is doing is false, deceptive, or unfair.  In other words, a
person must think to himself at some point, “Yes, I know this is false,
deceptive, or unfair to him, but I’m going to do it anyway.”

 

St. Paul Surplus Lines Ins. Co. v. Dal-Worth
Tank Co., 974 S.W.2d 51, 53-54
(Tex. 1998); Bossier Chrysler Dodge II, 201 S.W.3d at 807.

          Here, the record contains evidence that
Bossier Country falsely represented to Riley that he could cancel the deal and
that financing had been approved when Riley signed the installment contract.  Bossier
Country deals in countless transactions of a similar nature on a daily basis. 
Thus, a reasonable juror could infer that Bossier Country made these
misrepresentations and failed to disclose that Riley had not yet been approved
for financing with “actual awareness” that these representations were false.

          As already discussed, there is evidence
contradicting any finding that these representations were made or that they
were false when made.  We must defer to the jury’s resolution of this disputed
issue.  See Pulley, 198 S.W.3d at 426-27; Checker Bag, 27 S.W.3d at
633.

          Because the record contains some
evidence and factually sufficient evidence to uphold the jury’s finding that Bossier
Country acted knowingly, we overrule Bossier Country’s third issue.

Damages Cap

          Bossier Country contends in its fourth
issue that the court erred by failing to cap the jury’s award for mental
anguish damages at three times the amount of economic damages awarded under
section 17.50(b)(1) of the DTPA.  However, Bossier Country misreads the
statute.

          Section 17.50(b)(1) provides that a
DTPA plaintiff may recover:

the amount of economic damages found by the
trier of fact.  If the trier of fact finds that the conduct of the defendant
was committed knowingly, the consumer may also recover damages for mental
anguish, as found by the trier of fact, and the trier of fact may award not
more than three times the amount of economic damages;  or if the trier of fact
finds the conduct was committed intentionally, the consumer may recover damages
for mental anguish, as found by the trier of fact, and the trier of fact may
award not more than three times the amount of damages for mental anguish and
economic damages;

          

 Tex.
Bus. & Com. Code Ann. § 17.50(b)(1).








          Therefore, a prevailing plaintiff who
establishes that the defendant acted “knowingly” can recover “economic
damages,” mental anguish damages, and additional damages of up to three times
the amount of economic damages awarded.[4]  See
Tony Gullo Motors I, L.P. v. Chapa, 50 Tex. Sup. Ct. J. 278, 279, 2006 WL
3751591, at *1 (Tex. Dec. 22, 2006).  The statute imposes no cap on the amount
of damages the jury may award for mental anguish.

          Therefore, we overrule Bossier Country’s
fourth issue.

Interest

          Bossier Country contends in its fifth
issue that the court erroneously calculated prejudgment and postjudgment
interest at the rate of 10% per annum.  Riley agrees.

          Under sections 304.003(c)(2) and
304.103 of the Finance Code, the appropriate rate of interest is 5% per annum for
both prejudgment and postjudgment interest.  Tex.
Fin. Code Ann. §§ 304.003(c)(2), 304.103 (Vernon 2006); see Hayhoe v.
Henegar, 172 S.W.3d 642, 645-46 (Tex. App.—Eastland 2005, no pet.). 
Therefore, we will modify the judgment to recite the correct rates of
interest.  We sustain Bossier Country’s fifth issue.

We modify the judgment to recite the correct
rates of prejudgment and postjudgment interest, and we affirm the judgment as
modified.

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray dissenting)

Affirmed as modified

Opinion delivered and
filed March 14, 2007

[CV06]









[1]
          Riley’s testimony regarding when
he signed the various documents during his dealings with Bossier Country is
somewhat confusing and sometimes contradictory.  None of the witnesses whom Bossier
Country called saw Riley sign each of the documents.  The salesperson Banks
filled out only the “foursquare” worksheet which set out the basic terms of the
deal they were negotiating.  The remainder of the paperwork was prepared in the
finance department.  Nevertheless, it may be reasonably inferred from Riley’s
testimony and that of the other witnesses that he signed the initial MVPO and
the Conditional Sale and Delivery Agreement that morning and the remainder of
the documents when he returned that afternoon.





[2]
          The timing is unclear, but the
parties actually completed three MVPO’s.  Two of them are virtually identical
with the exception that one has a line drawn through it.  These two MVPO’s both
reflect the bargain Riley and Bossier Country had struck before Riley decided
to purchase the service contract.

 





[3]
          Riley provided this testimony
during questioning by counsel for Bossier Country.  Counsel was asking Riley
about several documents when Riley made this statement, and it is unclear to
which document Riley was referring.  Nevertheless, it was within the jury’s
discretion to conclude that Riley was referring to the installment contract.





[4]
          If the plaintiff establishes
that the defendant acted “intentionally,” the plaintiff can recover additional
damages of up to three times not only the amount of economic damages awarded
but also the amount of mental anguish damages awarded.  See Tony Gullo
Motors I, L.P. v. Chapa, 50 Tex. Sup. Ct. J. 278, 279 n.6, 2006 WL 3751591,
at *1 n.6 (Tex. Dec. 22, 2006).