COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-222-CV
 
 
JULIO 
C. MATHEUS                                                               APPELLANT
 
V.
  
SANDRA 
KAY SASSER, NANCY LANIER                                   APPELLEES
SANDS, 
AUCKLAND CORPORATION, AND
AUCKLAND, 
L.P. D/B/A KELLER
WILLIAMS 
REALTY
 
 
------------
 
FROM 
THE 352ND DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
        This 
is a deceptive trade practices case in which we must determine the proper 
measure of damages for a realtor’s misrepresentation concerning the square 
footage of a house.  The suit arose from a residential real estate purchase 
by Appellant Julio C. Matheus. Because the only complaints on appeal by Matheus 
relate to his claims against the two real estate agents who represented the 
seller, Nancy L. Sands and Sandra K. Sasser, and the agents’ employer, 
Auckland L.P. d/b/a Keller Williams Realty, we will discuss only the facts and 
issues relevant to his complaints against those Appellees.[1]   
Because we hold that Matheus proffered no evidence of an appropriate measure of 
damages, we affirm the take-nothing judgment of the trial court.
FACTUAL AND PROCEDURAL BACKGROUND
        Matheus 
was looking for a home for his family to live in while he built a house on a lot 
he had previously purchased. He testified that he only intended to live in the 
house for about a year and a half.  He located a house for sale near his 
lot, engaged an agent, and made an initial offer of about $78 per square foot, 
based upon a Multiple Listing Service (MLS) listing sheet stating the house was 
offered at $359,000 with 4,218 “sq. ft. per tax”. Sands and Sasser, agents 
for the seller, admitted at trial that they had miscalculated the square footage 
of the house.
        Sands 
and Sasser had obtained the number of square feet from the tax records, which 
showed square footage of the total living area and second floor space 
separately, and they had mistakenly added the two together. Both in the MLS 
sheet printed on Keller Williams letterhead and in a counteroffer letter to 
Matheus’s agent, Sasser and Sands stated that the house had 4,218 square feet. 
In the letter, Sands stated that the price being asked by the seller of $82.13 
per square foot was “very competitive and definitely a great purchase 
price.”
        Matheus 
testified that he relied on the representations of square footage in finally 
agreeing upon a price for the house of $343,225, which he calculated at $81.37 
per square foot for 4,218 square feet. An appraisal performed at the request of 
his mortgage company to assure that the fair market value of the house met or 
exceeded the price revealed that the house had only 3,593 square feet. According 
to Matheus, he did not receive a copy of the appraisal until after he and his 
wife had signed the papers at closing. Upon learning that the house had less 
square footage than represented, Matheus offered to revoke the sale or to be 
credited a portion of the sales price for the difference in square footage, but 
the offer was refused.
        Mattheus 
sued Appellees and others under the DTPA for damages resulting from the 
misrepresentation concerning the house’s square footage.[2]  
In a bench trial, Matheus asserted, and Appellees did not dispute, that the 
house actually contained only 3,593 square feet.  Matheus testified the 
house he received was not the 4,218 square foot house he bargained for.  
Matheus testified that he prepared his offers and counteroffers “per square 
foot,” that he bargained for a house that contained 4,218 square feet at a 
price of $81.37 per square foot, and that he received only 3,593 square feet.  
Matheus sought damages of $50,856.25 for the shortage of 625 square feet, 
calculated at $81.37 per square foot.
        At 
the conclusion of Matheus’s case, Appellees moved for judgment on the DTPA 
claim on the basis that Matheus had presented no evidence of the fair market 
value of the property, which they claimed was a necessary element for recovery 
under either the benefit-of-the-bargain or out-of-pocket measures of damages.  
After hearing arguments from both sides, the trial court granted the motion.  
Matheus contends that the trial court erred by granting the motion for judgment 
because the measure of damages he proposed was a proper measure of damages in a 
case of this nature, and that his testimony established his damages under that 
measure.
STANDARD OF REVIEW
        Appellees 
initially referred to their motion as a motion for judgment. Thereafter, and in 
their briefs to this court, the trial court and the parties sometimes 
characterize it as a motion for directed verdict.  Because the case was 
tried to the trial court, the proper term is “motion for judgment.”  Qantel 
Bus. Sys., Inc. v. Custom Controls Co., 761 S.W.2d 302, 303 (Tex. 1988); Schwartz 
v. Pinnacle Communications, 944 S.W.2d 427, 431 n.1 (Tex. App.—Houston 
[14th Dist.] 1997, no pet.).  This distinction is important because we 
review a judgment pursuant to a motion for judgment differently than a directed 
or instructed verdict.  Qantel, 761 S.W.2d at 303-04. In entering 
judgment at the close of a plaintiff’s case, the trial judge, acting as trier 
of fact and law, is presumed to have ruled on both the legal and factual issues.  
Id. at 304; Schwartz, 944 S.W.2d at 431.  The trial court in 
this case, however, made findings of fact and conclusions of law clearly 
indicating that she ruled against Matheus on the ground that he produced no 
evidence under the proper measure of damages.  Therefore, we do not reach 
the issue of factual sufficiency of the evidence.
        We 
review Matheus’s complaint that the trial court erred in applying an improper 
measure of damages as a question of law subject to de novo review.  Alamo 
Cmty. Coll. Dist. v. Browning Const. Co., 131 S.W.3d 146, 161 (Tex. 
App.—San Antonio 2004, pet. filed); Elias v. Mr. Yamaha, Inc., 33 
S.W.3d 54, 60 (Tex. App.—El Paso 2000, no pet.).  We review Matheus’s 
complaint that the trial court erred in concluding that he produced no evidence 
under the proper measure of damages as we would a directed verdict.  See 
Qantel, 761 S.W.2d at 303.  In so doing, we must view the evidence in 
the light most favorable to Matheus as the party against whom the motion for 
judgment was granted and disregard all contrary inferences, to determine whether 
there is any probative evidence raising a material fact issue.  Id.; 
White v. S. W. Bell Tel. Co., 651 S.W.2d 260, 262 (Tex. 1983).
PROPER MEASURE OF DAMAGES
        In 
response to Matheus’s argument that his damages are appropriately measured by 
the number of square feet by which the property was short times the price he 
paid per square foot, Appellees argue that there are only two measures of 
damages for misrepresentation, “benefit of bargain” and “out of pocket,” 
and that Matheus’s testimony based solely on those calculations is no evidence 
under either measure of damages.  Although we agree that Matheus’s 
evidence does not satisfy either of those measures of damages, we disagree that 
those are the only measures of damages available for misrepresentation under the 
DTPA.
        The 
applicable version of the DTPA provides that a consumer may recover “economic 
damages,” defined as “compensatory damages for pecuniary loss, including 
costs of repair or replacement.”  Tex. 
Bus. & Com. Code Ann. §§ 17.45(11), 17.50(b)(1) (Vernon 2002 ).  
We have found no case suggesting that the term “economic damages” carries 
any different meaning than “actual damages” as allowed under the prior 
version of the DTPA.[3]   Therefore, we may 
appropriately apply the case law decided under the prior and current versions of 
the Act. Actual damages for misrepresentation under the DTPA are those 
recoverable at common law.  Arthur Andersen & Co. v. Perry Equip. 
Corp., 945 S.W.2d 812, 816 (Tex. 1997) (citing Brown v. American Transfer 
& Storage Co., 601 S.W.2d 931, 939 (Tex.), cert. denied, 449 U.S. 
1015 (1980)).  At common law, actual damages are either “direct” or 
“consequential.” Id. (citing Henry S. Miller Co. v. Bynum, 836 
S.W.2d 160, 163 (Tex. 1992) (Phillips, C.J., concurring)).
        Direct 
damages are the necessary and usual result of the defendant’s wrongful act; 
they flow naturally and necessarily from the wrong.  Arthur Andersen, 
945 S.W.2d at 816.  Direct damages are those that are conclusively presumed 
to have been foreseen or contemplated by the party as the result of his wrongful 
act.  Henry S. Miller Co., 836 S.W.2d at 163.  Consequential 
damages, on the other hand, are those that result naturally, but not 
necessarily, from the acts complained of.  Id. at 163 (citing Dan B. Dobbs, The Law of Remedies § 9.2 (1973)).  
Under the DTPA, consequential damages need not be the usual result of the wrong 
but must be directly traceable to the wrongful act and result from it. Arthur 
Andersen, 945 S.W.2d at 816; see also Haynes & Boone v. Bowser 
Bouldin, Ltd., 896 S.W.2d 179, 181-82 (Tex. 1995) (holding there must be 
evidence of a direct causal link between damages awarded, actions of defendant, 
and injury suffered to recover consequential damages for false, misleading, and 
deceptive actions under the DTPA).
        For 
misrepresentation, there are two recognized measures of direct damages: 
the out-of-pocket measure or the benefit-of-the-bargain measure, whichever gives 
the plaintiff the greater recovery.  Arthur Andersen, 945 S.W.2d at 
817; Leyendecker, 683 S.W.2d at 373; Ford Motor Co., 125 S.W.3d at 
798.  Out-of-pocket damages, based upon a restitutionary theory, measure 
the difference between the value the buyer has paid and the value of what he has 
received.  Arthur Anderson, 945 S.W.2d at 817; W.O. Bankston 
Nissan, 754 S.W.2d at 128; Ford Motor Co., 125 S.W.3d at 798.  
Benefit-of-the-bargain damages, under an expectancy theory, measure the 
difference between the value as represented and the value as received.  Arthur 
Anderson, 945 S.W.2d at 817; W.O. Bankston Nissan, 754 S.W.2d at 128; 
Ford Motor Co., 125 S.W.3d at 798.
        The 
DTPA allows the consumer to recover either the out-of-pocket measure or the 
benefit-of-the bargain measure, whichever is greater. W.O. Bankston Nissan, 
754 S.W.2d at 128. But contrary to Appellees’ argument, such direct damages 
are not exclusive under the DTPA. See, e.g., Henry S. Miller Co., 836 
S.W.2d at 162 (explicitly stating “such direct measures . . . are not 
exclusive”) (emphasis added). Other damages may be allowed to ensure that 
the plaintiff is made whole. Id.; Norwest Mortgage, Inc. v. Salinas, 
999 S.W.2d 846, 863 (Tex. App.—Corpus Christi 1999, pet. denied). In Perry 
Homes v. Alwattari, we expressly recognized that “[o]ut-of-pocket loss and 
benefit-of-the-bargain are not the exclusive measures of recoverable damages 
under the DTPA.” 33 S.W.3d 376, 386 (Tex. App.—Fort Worth 2000, pet. 
denied).
        Actual 
damages under the DTPA have been defined as “the total loss sustained [by the 
consumer] as the result of the deceptive trade practice.”  Henry S. 
Miller Co., 836 S.W.2d at 162 (citing Kish v. Van Note, 692 S.W.2d 
463, 466 (Tex. 1985); Smith v. Baldwin, 611 S.W.2d 611, 617 (Tex. 1980)) 
(alteration in original).  Consequential damages have been allowed in DTPA 
cases for a variety of losses.  See Henry S. Miller Co., 836 S.W.2d 
at 163 (loss of capital improvements); Kish, 692 S.W.2d at 468 (related 
and reasonable necessary expenses); White, 651 S.W.2d at 263 (loss of 
profits); Kold-Serve Corp. v. Ward, 736 S.W.2d 750, 755 (Tex. 
App.—Corpus Christi 1987) (interest on indebtedness), writ dism’d, 
748 S.W.2d 227 (Tex. 1988); Village Mobile Homes, Inc. v. Porter, 716 
S.W.2d 543, 550 (Tex. App.— Austin 1986, writ ref’d n.r.e.) (loss of 
improvements).  Although the foreseeability requirement for consequential 
damages does not apply under the DTPA, such additional damages must be proved 
with reasonable certainty and are not recoverable if they are too remote, too 
uncertain, or purely conjectural.  Arthur Anderson, 945 S.W.2d at 
816.  Consequential damages must be specially pled.  Henry S. 
Miller Co., 836 S.W.2d at 164.
        Matheus 
did not plead nor does he argue consequential damages but, rather, that damages 
based on a price per square foot basis are appropriate under the 
benefit-of-the-bargain measure.  Under his calculations, he is entitled to 
damages measured by multiplying the difference between the number of square feet 
represented from that actually received (4,218 - 3,593 = 625) by the price per 
square foot he paid for the house as represented ($342,225/4,218 = $81.37), for 
a total of $50,856.25.  Matheus relies upon George D. Thomas Builder 
Inc. v. Timmons, a case involving similar facts from the El Paso Court of 
Appeals, which approved the method of calculating damages that Matheus proposed 
in the trial court.  658 S.W.2d 194, 197 (Tex. App.—El Paso 1983, writ 
ref’d n.r.e.).
        In 
that case, the Timmonses purchased a home for $30,000.  Id. at 195.  
They claimed that their real estate agent “represented to them that the home 
had 1,420 square feet of improved living space,” and that they relied on that 
representation when agreeing on the purchase price. Id. When they 
subsequently decided to sell the home, it was determined that it actually had 
only 1,286 square feet of living space. Id. The Timmonses sued the real 
estate agent for violations of the DTPA. Id. At trial, the jury found 
that the representations as to square footage were “material” and found 
“that $3,000.00 would fairly and reasonably compensate the Plaintiffs for 
their actual damages.” Id. On appeal, the real estate agent challenged 
the legal and factual sufficiency of the evidence supporting the jury’s 
finding of damages. Id. at 197.
        Based 
on an examination of the evidence, the court of appeals determined that it was 
apparent that the jury “calculated damages by using the difference in actual 
square footage in the home and the square footage represented.”  Id.  
The Timmons court determined that “the cost of the house per square 
foot as represented would be $22.33, and the square footage deficiency would be 
134 square feet.  Multiplying the two, damages would be $2,992.22.”  
Id.  The court held, “This is a permissible measure of damages in 
a case of this nature.” Id.
        We 
are not persuaded that Timmons applies to the facts in this case.  
First, the jury question on damages was submitted generally in that case with no 
instruction as to the measure of damages, nor did the court of appeals 
characterize the damages as based upon any particular, common-law measure.  
The court was only able to ascertain how the jury calculated the damages through 
backing into the amount through mathematical calculations based on the evidence 
as to square feet and price, “without knowing exactly how the jury arrived at 
its figure.”  Id. Without a discussion detailing the evidence or 
case law relied upon by the court, we are left to speculate as to whether the 
court considered the measure of damages allowed as benefit-of-the-bargain, 
return of out-of-pocket loss, or consequential damages.
        Second, 
the statement of the court of appeals in Timmons that the measure of 
damages used was “permissible” is dicta since it does not appear that the 
correctness of the measure of damages was at issue.  The opinion states 
only that the appellant challenged the legal and factual sufficiency of evidence 
to support the damages awarded.  Id.  Third, a significant 
distinction between this case and Timmons is that the purchaser contended 
in Timmons that the property’s value was “significantly lowered” by 
the discrepancy in square footage.  Id. at 195.  Calculating 
damages by the difference between the price per square foot as represented times 
the number of feet by which the property received is deficient might be 
appropriate where reimbursing the purchaser based on the price paid per square 
foot of the deficiency is needed to make the purchaser whole.[4]  
In contrast to the purchaser in Timmons, Matheus has never contended that 
his property’s value was lowered by the deficiency in the square footage.
        Indeed, 
Matheus admitted on cross-examination that, although he did not actually see the 
appraisal until after closing, he knew that the house appraised for more than 
what he was paying before closing.  The appraisal, admitted into evidence 
without objection, placed a fair market value on the property of $347,000.00 at 
the time of closing, at the lesser but correct number of 3595 square feet.  
Thus, Matheus received property with a greater value than he bargained 
for even though it contained fewer square feet.  Multiplying the price paid 
per square foot as represented by the number of square feet of the deficiency is 
not necessary to make Matheus whole.  Instead, it would overcompensate him.
        We, 
along with the Timmons court, note that the measure of damages sought to 
be invoked here has been used previously.  In Cameron v. Terrell & 
Garrett, Inc., the Texas Supreme Court ascertained from the record that the 
jury in that case likewise calculated damages “by multiplying the cost of the 
house per square foot as represented . . . times the square footage 
deficiency.”  618 S.W.2d 535, 538 n.4 (Tex. 1981).  The jury 
question there, as in Timmons, did not contain an instruction on a 
measure of damages.  Id.  The supreme court did not address 
whether the measure of damages used by the jury was proper, holding that Terrell 
& Garrett, Inc. waived error by failing to object to the evidence and 
failing to request an instruction on the proper measure of damages.  Id.  
Generally, damages calculated as Matheus proposes have only been allowed where a 
sale of real estate is on an agreed “per unit” basis.  See Denman v. 
Stuart, 142 Tex. 129, 132-33, 176 S.W.2d 730, 732 (1944) (holding value per 
acre negotiated by parties for sale of tract applied to determine damages for 
shortage); Schleicher County v. Hudgens, 255 S.W.2d 927, 932 (Tex. Civ. 
App.—El Paso 1952, no writ) (holding vendee entitled to recover price per acre 
for shortage in realty sold by the acre); Moss-Tate Inv. Co. v. Owens, 22 
S.W.2d 1096, 1098 (Tex. Civ. App.—Dallas 1929, writ ref’d) (allowing 
recovery at agreed price per foot for shortage in lot of 63.6 feet); see 
generally, Annotation, Measure and Elements of Damages Recoverable from 
Vendor Where There Has Been Mistake as to Amount of Land Conveyed, 94 
A.L.R.3d 1091 (1979).
        There 
was evidence that Matheus calculated the lump sum offers and counteroffers, as 
well as agreeing to the final price for the property on a per square foot basis 
of living space of the house for negotiation and comparison purposes with other 
properties.  But the MLS sheet, in listing the price and description of the 
property, reveals a listing price of a lump sum figure, with the square feet 
stated as a descriptive reference.  Matheus points to Sasser and Sands’s 
letter to Matheus’s agent stating that “[a]t the sales price of $346,450 
it’s priced at $82.13 per square foot, which make[s] this property very 
competitive and definitely a great purchase price.”  The letter further 
indicates that other houses on the market in the subdivision were priced at 
“an average of $95.98 per square foot” and other “comparable properties” 
were priced at “an average of $94.50 a square foot.”  While the letter 
was evidence that the price per square foot was a negotiating factor in 
calculating the final price agreed upon between the parties, this does not 
equate to evidence that the sale of the house was a negotiated agreement for a 
sale based on a per square foot unit.  The evidence of the agents was 
undisputed that they were never aware that Matheus was attempting to negotiate a 
sale on a per square foot basis.  And Matheus has pointed to no evidence 
that the final negotiated price was agreed upon per square foot, that is, per 
“unit” as compared with a sale in “gross” so as to entitle him to 
measure the damages in the manner he seeks.  We overrule Matheus’s first 
issue and hold that the trial court did not err in granting the motion for 
judgment because Matheus’s proposed measure of damages was not proper under 
the circumstances of this case.
EVIDENCE OF DAMAGES UNDER PROPER MEASURE
        Matheus 
nevertheless contends that he produced legally sufficient evidence of damages 
under the benefit-of-the-bargain measure of direct damages.  Initially, we 
disagree with Appellees’ argument that Matheus failed to offer any evidence of 
the fair market value of the property as represented.  After negotiating, 
the parties settled on a sales price of $343,225.  Matheus testified that 
the final sales price agreed upon reflects a price of $81.37 per square foot for 
a house represented to contain 4,218 square feet.  The price agreed on 
between two parties is some evidence to support a fact finding on fair market 
value of property as represented in an action under the DTPA.  Ford 
Motor Co., 125 S.W.3d at 799 (holding parties’ negotiated price of vehicle 
was evidence of market value as represented); Barraza v. Koliba, 933 
S.W.2d 164, 169 (Tex. App.—San Antonio 1996, writ denied) (op. on reh’g) 
(holding evidence of amount paid for property thought to include mineral rights 
was more than a scintilla to support market value of land as represented).  
The price agreed on by the parties is evidence of the property’s fair market 
value as represented, at a time when Matheus believed the house contained 4,218 
square feet.
        Under 
either the benefit-of-the-bargain or the out-of-pocket measure of damages, the 
plaintiff is also required to prove the fair market value of the item as 
received.  W.O. Bankston Nissan, 754 S.W.2d at 128; Jabri v. 
Alsayyed, 145 S.W.3d 660, 667 (Tex. App.—Houston [14th Dist.] 2004, no 
pet.); see Ford Motor Co., 125 S.W.3d at 799, 803 (holding recovery 
precluded absent evidence of market value of vehicle when received); Barraza, 
933 S.W.2d at 170 (holding evidence legally insufficient to establish “other 
leg of damages model” absent evidence of market value of land without minerals 
on date of sale).
        A 
property owner may testify as to fair market value of his property, but only if 
his testimony reveals that he is familiar with the market value and only if his 
assessment is based on market value rather than intrinsic value of the property 
to him.  Redman Homes, Inc. v. Ivy, 920 S.W.2d 664, 669 (Tex. 1996); 
Porras v. Craig, 675 S.W.2d 503, 504 (Tex. 1984); Jabri, 145 
S.W.3d at 667; Ford Motor Co., 125 S.W.3d at 799; Barraza, 933 
S.W.2d at 169.  Fair market value is the price property would bring when 
offered for sale by one who desires, but is not obligated, to sell, and is 
bought by one who is under no obligation to buy.  Jabri, 145 S.W.3d 
at 667; Nelson v. Najm, 127 S.W.3d 170, 177 (Tex. App.—Houston [1st 
Dist.] 2003, pet. denied).  Intrinsic value, in contrast, is an inherent 
value not established by market forces, but based upon sentimental or personal 
value.  Ford Motor Co., 125 S.W.3d at 799.
        The 
only evidence as to the fair market value of the house as received with the 625 
square foot shortage was the appraisal that reflected a value greater than the 
value represented.  Matheus offered no expert testimony that the fair 
market value of the house with the shortage was less than the value as 
represented to him.  Matheus, himself, testified only as to the amount he 
proposed to “make things right” by his own calculations based on the price 
he paid per square foot times the missing 625 square feet.  According to 
Matheus, the square footage was important to him in purchasing the house because 
he wanted to be close to the house he planned to build, and that he wanted to 
sell it for at least what he put into it after making planned changes to the 
inside.
        Matheus’s 
testimony affirmatively reflected that he was referring to the intrinsic value 
of the property to him for his personal purposes, rather than the fair market 
value.  As such, his testimony was irrelevant to the proper measure of 
damages either based on benefit-of-the-bargain or out-of-pocket loss, and 
constituted no evidence of the market value of the property as received.  Porras, 
675 S.W.2d at 505 (holding testimony of owner referring to personal rather than 
market value irrelevant and no evidence, even absent objection); Ford Motor 
Co., 125 S.W.3d at 803 (holding owner’s opinion that vehicle’s value was 
“worthless” as “unsafe for what I want it for” affirmatively showed 
opinion based on personal value to him and constituted no evidence); Pontiac 
v. Elliott, 775 S.W.2d 395, 398-99 (Tex. App.—Houston [1st Dist.] 1989, 
writ denied) (holding owner’s testimony as to auto’s value as “nothing” 
as she could not depend on it or sell it referred to intrinsic value of vehicle 
to her and constituted no evidence).
        Additionally, 
we note that the supreme court in Cameron seemed to express doubt as to 
the propriety of the jury’s manner of calculating the damages per square foot, 
in noting that the jury’s figures included the value of the land in evaluating 
the damages for deficiency in the square footage of the house.  618 S.W.2d 
at 538 n.4.  Similarly, the price agreed to by the parties in this case for 
the house also included the land.  Matheus received the land as bargained 
for, along with the house, for the price he paid, but he produced no evidence of 
the price per square foot for the house, apart from the price for the entire lot 
and house together.  See Leyendecker, 683 S.W.2d at 373 (holding 
buyer not entitled to out-of-pocket measure of damages based on deficiency in 
square footage of house absent evidence or finding as to the price paid for 
missing square footage as distinct from price of entire lot and improvements).
        There 
was no competent evidence to support the damages sought by Matheus under either 
the benefit-of-the bargain or out-of-pocket measure of damages.  
Consequently, we overrule Matheus’s second issue and hold that the trial court 
did not err in granting Appellees’ motion for judgment.
CONCLUSION
        Having 
overruled both of Appellant Matheus’s issues, we affirm the trial court’s 
take-nothing judgment against Appellant and in favor of Appellees Sasser, Sands, 
and Auckland.
 
  
                                                          ANNE 
GARDNER
                                                          JUSTICE
 
 
 
PANEL 
B:HOLMAN, GARDNER, and WALKER, JJ.
 
DELIVERED: 
April 21, 2005


NOTES
1.  
The trial court granted a summary judgment in favor of Keller Williams Realty, 
Inc. as to all claims against it, and rendered a take-nothing judgment in favor 
of the seller of the property after trial.  Appellant does not complain of 
the judgment in favor of those parties in this appeal.
2.  
See Tex. Bus. & Com. Code Ann. 
§ 17.46(b) (5), (9) (Vernon Supp. 2004-05), § 17.50 (Vernon 2002).  
Matheus also brought other causes of action, but they are not at issue in this 
appeal.
3.  
In 1995, the legislature amended section 17.50(b)(1) to permit recovery of 
“economic damages” instead of “actual damages.”  Act of May 29, 
1989, 71st Leg., R.S., ch. 380, § 2, 1989 Tex. Gen. Laws 1490, 1491, amended 
by Act of May 19, 1995, 74th Leg., R.S., ch. 414, § 5, 1995 Tex. Gen. Laws 
2988, 2992 (current version at Tex. Bus. 
& Com. Code Ann. § 17.50(b)(1) (Vernon 2002)).  After the 
amendment, appellate courts have used the terms “actual damages” and 
“economic damages” interchangeably and cited as authority Texas Supreme 
Court cases applying the statute prior to the amendment.  See Ford Motor 
Co. v. Cooper, 125 S.W.3d 794, 798-99 (Tex. App.—Texarkana 2004, no pet.) 
(citing W.O. Bankston Nissan, Inc. v. Walters, 754 S.W.2d 127, 128 (Tex. 
1988) and Leyendecker & Assocs., Inc. v. Wechter, 683 S.W.2d 369, 373 
(Tex. 1984)); Valley Nissan, Inc. v. Davila, 133 S.W.3d 702, 713 (Tex. 
App.—Corpus Christi 2003, no pet.) (citing Farrell v. Hunt, 714 S.W.2d 
298, 300 (Tex. 1986)).
4.  
On its face, this is a recisionary measure, i.e., an out-of-pocket measure of 
damages: reimbursement for the difference between the price paid and the 
value of the property received, rather than the benefit-of-the bargain measure.