BALDERSON–BERGER EQUIPMENT COMPANY, INC., Appellant,

v.

Freddie BLOUNT, Appellee.

No. 07–81–0291–CV.

Court of Appeals of Texas, Amarillo.

May 20, 1983.

Rehearing Denied June 13, 1983.

Barkley & Cutcher, Inc., Leland R. Enochs, Taylor, for appellant.

Bowers, Cotten & Harland, Pete Harland, Lubbock, for appellee.

Before REYNOLDS, C.J., and DODSON and COUNTISS, JJ.

REYNOLDS, Chief Judge.

The determinative question in this venue phase of an action for breach of oral and implied warranties is whether a cause of action arises upon proof of the pleaded breach of one or more of the warranties which are excluded by the written memorials of the transaction. We answer the question in the negative, reverse the trial court's judgment to the contrary, and render.

Freddie Blount, a resident of Yoakum County who had been doing business for some nineteen years with Balderson-Berger Equipment Company, Inc., a Texas corporation domiciled in Williamson County, purchased a new 760 Massey Ferguson combine from Balderson-Berger. The sale-purchase negotiations occurred in Yoakum County between Blount and Weldon Berger, president of Balderson-Berger.

Thereafter, Blount filed suit in Yoakum County against Balderson-Berger, seeking monetary damages for breach of an express and an implied warranty. Blount alleged that "[a]t the time of said purchase, and as a part of the transaction," Balderson-Berger, through Berger, expressly warranted that the combine would cut green maize and impliedly warranted that it was fit and suitable for Blount's intended purpose, when, in reality, the combine would not cut green maize and was wholly unfit and useless for its intended purpose.

Balderson-Berger interposed its plea of privilege, claiming a right to have the suit transferred to Williamson County. Subject to its plea of privilege, Balderson-Berger filed its original answer by which it levied special exceptions to Blount's petition, generally and specially denied Blount's allegations, asserted affirmative defenses under which it included the written exclusion of the warranties upon which Blount relied, and counterclaimed to recover the balance due upon the note Blount executed in partial payment for the combine, together with attorney's fees specified in the note.

Blount controverted the plea of privilege, pleading the applicability of the subdivision 23 exception to the general venue statute, Article 1995 of the Texas Revised Civil Statutes Annotated (Vernon 1964). To the extent that it is material to the venue at issue, the subdivision provides that:

> Suits against a private corporation ... may be brought ... in the county in which the cause of action or part thereof arose.

The private corporation status of Balderson-Berger was procedurally established as a matter of law.

Blount was the sole witness at the venue hearing. On direct examination, he described his negotiations with Berger leading to his purchase of the combine, giving his version of the affirmation or promise pleaded

to be the express warranty that the combine would cut green maize,[1] and the one pleaded to be the implied warranty of fitness.[2] He then detailed the problems experienced with the combine's performance of only 160 hours of actual combining and his unavailing complaints to Balderson-Berger. He stated that the problems were not rectified and affirmed that the combine had not done what he expected it to do when he bought it.

Blount introduced in evidence a copy of the retail purchase order for the combine dated 19 April 1976, which was completed and signed by Berger at Blount's home in Yoakum County but was not signed by Blount. There appears on the face of the copy immediately above the line for the buyer's signature this language:

> The undersigned buyer(s) acknowledge(s) that the SELLER'S WARRANTY ON THE REVERSE SIDE was explained to and understood by him and that he agrees to the provisions thereof.

On the reverse side, there is, among other provisions, paragraph 10, the first subparagraph of which reads as follows:

> Dealer (Seller's) Warranty and Agreement—All new Massey-Ferguson agricultural machines and equipment (hereafter called products) are sold by the dealer upon the following warranty and agreement given by the dealer, WHICH IS IN

---

1. When asked to explain his petition allegation that Balderson-Berger warranted the machine to cut green maize, Blount gave the following explanation:

> A Well, in trading for this new one, I told him [Berger] I wanted all the options on it to do everything that I done in my operation, but I didn't want to cut any corn, and I didn't want to cut any flax.
> Q All right, sir.
> A And he knows a lot of the people I cut maize for around Taylor and South Texas and on up Hillsboro and up through that country, and cut all that maize with a—on a green stalk, and you let the maize mature until it is ripe enough you can whip it off of the head.

Later, as his answer to an inquiry of his expectations, Blount added:

> A Mr. Berger told me it was ready to go to the maize field any time I got some maize to cut.

2. The essence of the implied warranty was developed in these dialogues between Blount and his counsel:

> Q Okay. When you bought this 760 Massey Ferguson combine in 1976 from Balderson-Berger, now do you have reason to believe that the folks down there that you bought it from were reasonably familiar with the kind of operation that you conducted in your custom combining?
> A Yes, sir.
>      *      *      *      *      *      *
> Q Now, are you saying that Mr. Berger knew, whenever he filled out that purchase order, what you were going to do with that combine?
> A Yes, sir.
> Q Based on past knowledge and experience?
> A That's right.

LIEU OF AND EXCLUDES ALL OTHER WARRANTIES AND CONDITIONS EXPRESSED OR IMPLIED, INCLUDING THE WARRANTIES AND CONDITIONS OF MERCHANTABILITY AND FITNESS FOR PURPOSE, and any other obligation on the part of the dealer or Massey-Ferguson. The dealer neither assumes nor authorizes any person to assume for it any other liability in connection with the sale of such products. The obligation of the dealer or Massey-Ferguson, under this warranty, is limited to replacing parts, at no charge to the buyer, which prove defective with normal and proper use of the product for the purpose intended.

The fourth and last subparagraph of paragraph 10 states, in part, the following:

IN NO EVENT SHALL THE BUYER BE ENTITLED TO RECOVER FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING, BUT NOT LIMITED TO, LOSS OF CROPS, INCONVENIENCE, RENTAL OF REPLACEMENT EQUIPMENT, LOSS OF PROFITS, OR OTHER COMMERCIAL LOSS.

Blount testified, in a voir dire examination, that he did not sign the copy he introduced in evidence or "anything like that." However, later on cross-examination when he was shown either the original or a replica of the copy, he acknowledged that the written name "Freddie Blount" affixed thereon "looks like" his signature.

During his cross-examination, Blount identified his signature on a retail installment contract and security agreement carrying the date of 29 April 1976. The document was received in evidence and Blount read two excerpts from it. The first excerpt, appearing on the face of the document, has this wording:

SEE REVERSE SIDE FOR IMPORTANT INFORMATION

Buyer acknowledges that the WARRANTY on the reverse side was read and understood by Buyer and that he accepts and agrees to the provisions thereof.

The second excerpt, appearing on the reverse side, is in this language:

All NEW Massey-Ferguson agricultural machines and equipment (hereafter called products) are sold by the dealer upon the following warranty and agreement given by the dealer, WHICH IS IN LIEU OF AND EXCLUDES ALL OTHER WARRANTIES AND CONDITIONS EXPRESSED OR IMPLIED, INCLUDING THE WARRANTIES AND CONDITIONS OF MERCHANTABILITY AND FITNESS FOR PURPOSE, and any other obligation on the part of the dealer or Massey-Ferguson. The dealer neither assumes nor authorizes any person to assume for it any other liability in connection with the sale of such products. The obligation of the dealer or Massey-Ferguson, under this warranty, is limited to replacing parts, at no charge to the Buyer, which prove defective with normal and proper use of the product for the purpose intended.

Blount agreed that the document refers to the transaction of his purchase of the combine about which he was testifying, and he affirmed that his agreement concerning the transaction was reduced to writing.

Still, on redirect examination, Blount testified that the retail installment contract was blank when he signed it on the same day he signed the retail purchase order. He denied that the provisions relating to the warranty were read, pointed out or explained to him.

On recross examination, Blount maintained that he did not read anything on the retail installment contract and security agreement, even though just above his signature are these words:

NOTICE TO BUYER

Do not sign this contract before you read it or if it contains any blank space.

He asserted that Berger just marked it and said, "Sign here, I've got to go."

Blount also identified, and there was received in evidence, a note he had executed for part of the down payment on the com-

bine. Inquiry about the payments made on the note was foreclosed, after two questions had been asked and answered, when the court sustained Blount's objection that the inquiry went to Balderson-Berger's counterclaim which has no place in the hearing.

At the conclusion of the hearing, the court overruled Balderson-Berger's plea of privilege without stating the basis for the ruling. In appealing, Balderson-Berger submits, in two points of error, that the trial court erred in its ruling because Blount failed either to establish a cause of action against it or to prove that a cause of action, or part thereof, arose in Yoakum County, both of which are required by subdivision 23 of the venue statute.

A threshold matter for initial attention is Blount's counterpoint-contention that Balderson-Berger waived its plea of privilege. The contention, a two-fold one, is that the plea of privilege was waived by Balderson-Berger's (a) filing its counterclaim which was not made subject to its plea of privilege, and (b) eliciting testimony regarding the counterclaim. Aside from the reality that the contention was not voiced in the trial court and could not have been the basis for the court's ruling, we are not otherwise persuaded that there was a waiver under this record.

■ Although the counterclaim itself does not state that it was filed subject to the plea of privilege, it was incorporated as a part of Balderson-Berger's original answer which was specified to be "subject to its Plea of Privilege." Moreover, the subsequent filing of the counterclaim without pleading that it was subject to the plea of privilege does not constitute a waiver of the plea. *H. Molsen & Co., Inc. v. Williamson,* 510 S.W.2d 366, 368 (Tex.Civ.App.—Dallas 1974, no writ); *Edgar v. Bartek,* 507 S.W.2d 831, 835 (Tex.Civ.App.—Corpus Christi 1974, writ dism'd), and authorities there cited.

The nonwaiver holding in *H. Molsen & Co., Inc.* is adopted "especially where such instrument [the counterclaim] does not invoke the court's general jurisdiction prior to the disposition of the plea [of privilege]."

*Id.* Cognizant of the complete holding, Blount argues that it is not dispositive because, by eliciting testimony regarding its counterclaim—*i.e.,* beginning inquiries and receiving answers about payments on the note—at the venue hearing, Balderson-Berger acted inconsistent with its position upon the venue issue and, by the authority of *Mooney Aircraft, Inc. v. Adams,* 377 S.W.2d 123 (Tex.Civ.App.—Dallas 1964, no writ), waived its plea of privilege.

In *Mooney Aircraft, Inc.,* two suits were brought against the aircraft corporation in different district courts in Dallas County as the aftermath of an aircraft crash. The corporation filed its plea of privilege in each case for the removal of the suits to Kerr County. After the pleas were controverted and prior to a venue hearing, the corporation moved one of the district courts to consolidate the two suits. The court granted the motion and ordered the two suits consolidated. Thereafter, one of the plaintiffs moved for summary judgment overruling the corporation's plea of privilege in her cause, one ground being that the plea was waived by the corporation's filing its motion to consolidate, which invoked the affirmative jurisdiction of the court. The court granted the summary judgment motion and overruled the plea of privilege. On appeal, it was held that the corporation "by his (sic) own action in invoking the general jurisdiction of the court by its motion to consolidate the two cases, has effectively waived its plea of privilege." *Id.* at 125.

The *Mooney Aircraft, Inc.* waiver holding, like the other kindred holdings upon which Blount relies, obtains when the movant for a change of venue thereafter actually submits, either overtly or inadvertently, for the court's judicial action, usually by order or judgment, a matter alien to the venue question without securing a ruling on the pending plea of privilege. *Id.* at 126. That situation is not presented by this record.

■ Although Balderson-Berger made two inquiries and received two answers which admittedly pertained only to its coun-

terclaim, there is nothing beyond that in the record to evince that Balderson-Berger sought a judicial determination of its counterclaim either in advance of insisting that its plea of privilege be heard and determined or in the hearing being held to adjudicate the merits of its plea of privilege. Thus, we hold that the aborted inquiry into a matter embraced in Balderson-Berger's counterclaim during the venue hearing did not negate the continuing intent to insist on its plea of privilege so as to waive it. *See* 1 R. McDonald, Texas Civil Practice § 4.40 (rev. 1981). Blount's first counterpoint is overruled.

Balderson-Berger contends that Blount failed either to establish a cause of action against it or to prove that a cause of action, or part thereof, arose in Yoakum County because the warranties upon which Blount relies for a cause of action were specifically excluded by the written agreements of the transaction and, consequently, Blount's evidence of prior warranties is barred by the Parol Evidence Rule. Blount replies to this contention with his second counterpoint and, by his third counterpoint, Blount contends that any written exclusion of existing warranties is an affirmative defense concerning the merits of the action which he is not required to meet and defeat in the venue hearing. Inasmuch as the contradictory contentions are so closely interrelated, they will be addressed together.

■ The contradictory contentions mark the distinction between a hearing upon a plea of privilege and a trial upon the merits. The hearing on a plea of privilege is to determine whether the defendant is suable on the transaction involved in the county where plaintiff files the suit; the trial on the merits of the suit is to determine the liability, if any, of the defendant on the transaction. Hence, on hearing the plea of privilege, no matters shall be considered other than those necessary to determine whether venue is proper in the county where the suit is filed. *General Motors Acceptance Corporation v. Howard,* 487 S.W.2d 708, 711 (Tex.1972).

■ By invoking the subdivision 23 exception to defeat Balderson-Berger's plea of privilege, Blount assumed the burden to plead and prove, *inter alia,* a cause of action against Balderson-Berger. *Victoria Bank & Trust Co. v. Monteith,* 138 Tex. 216, 158 S.W.2d 63, 67 (1941). The pleaded cause of action was the breach of the oral and implied warranties given, in Blount's words, "[a]t the time of said purchase [of the combine], and as a part of the transaction." Accepting that the proof shows the oral and implied warranties were made and given and then breached as pleaded, the proof also shows that "at the time of said purchase," the transaction was, as Blount acknowledged, reduced to writing. The written integration of the transaction consisted of two documents. The first was the retail purchase order, the copy of which Blount introduced was unsigned by him, but he did not deny that he had signed the original or replica which was introduced with his name signed thereon. The other written document of the transaction was, as Blount agreed, the retail installment contract and security agreement he signed. Both written documents contain the same specific exclusion of the oral and implied warranties upon which Blount relies as the basis for his asserted cause of action against Balderson-Berger. Having documented their transaction by signed writings, the parties are bound by the provisions of the documents. *Pyle v. Eastern Seed Co.,* 145 Tex. 385, 198 S.W.2d 562, 563 (1946).

■ It was evinced that the oral and implied warranties preceded the consummation of the transaction which Blount had to establish as an integral part of his cause of action, for, without showing the completed transaction itself, the warranties relied upon are mere utterances and implications without meaning to any bargain reached. However, once the completed transaction was shown, it manifested that the warranties relied upon by Blount were excluded as a basis of the bargain, thereby negating his alleged cause of action. *John Deere Company of Kansas City v. Tenberg,* 445 S.W.2d 40 (Tex.Civ.App.—Beaumont 1969, no writ). In the posture of the cause, then, the writ-

ten exclusion of the pleaded warranties was not an affirmative defense; instead, the written exclusion was an integral part of the transaction Blount had to show before he could establish the cause of action pleaded against Balderson-Berger. *Id.* Blount's third counterpoint is overruled.

Still, Blount submits that *Tenberg* should not be controlling since it arose before the Uniform Commercial Code became effective in Texas, and particularly since, he argues, the express oral warranty and the implied warranty of fitness have validity under Sections 2.313 and 2.315, respectively, of the Texas Business and Commerce Code. We are not influenced by the record toward those views.

■ The express oral warranty that the combine would cut green maize can be given effect only if it, in the words of the statute, "becomes part of the basis of the bargain." Tex.Bus. & Com.Code Ann. § 2.313(a)(1) (Vernon 1968). The section, as explained in the second comment thereunder, "is limited in its scope and direct purpose to warranties made by the seller to the buyer as a part of a contract for sale." In this transaction, however, the written documentation specifically excluded the warranty; it, therefore, was not made a part of the contract.

■ The implied warranty of fitness is sanctioned by Section 2.315 "unless excluded." For the implied warranty to be excluded, "[t]he exclusion must be by a writing and conspicuous." *Id.* § 2.316(b). The written language in the transactional documents excluding this warranty exceeds the statutory requirement for the exclusion of an implied warranty of fitness.

■ Blount does not suggest that the written exclusions are defective in any manner. He does point out, though, that he signed the documents without reading them or having them read to him. Nevertheless, Blount had the obligation to protect himself by reading what he signed and he may not be excused from the consequences of failing to meet that obligation. *G–W–L, Inc. v. Robichaux,* 643 S.W.2d 392, 393 (Tex.1982).

■ Under the circumstances developed in this record, the Code provisions advanced by Blount are inapplicable to lessen the impact of *Tenberg.* Thus, absent proof of fraud, accident or mutual mistake, none of which was pleaded or attempted to be proved, not only were the alleged warranties preceding the sale-purchase of the combine merged in and superseded by the written memorials of the transaction, *Browning-Ferris Mach. Co. v. Thomson,* 58 S.W.2d 183, 186 (Tex.Civ.App.—Austin 1932, no writ), but evidence of them would be excluded both by the traditional Parol Evidence Rule, 2 R. Ray, Texas Law of Evidence § 1664 (Texas Practice 3d ed. 1980), and by a provision of the Code itself. Tex. Bus. & Com.Code Ann. § 2.202 (Vernon 1968).

■ Therefore, we conclude that the trial court's factual findings that a cause of action accrued to Blount against Balderson-Berger and that such cause of action, or a part thereof, arose in Yoakum County are without evidential support, and the court's identical legal conclusions are erroneous. We, accordingly, sustain Balderson-Berger's two points of error and overrule Blount's second counterpoint.

The judgment of the trial court is reversed. Judgment is here rendered ordering that this cause be transferred to the district court of Williamson County.